IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–03087–PAB–KMT

ROMULUS ALBU, on behalf of himself and all similarly situated persons,

     Plaintiff,

v.

DELTA MECHANICAL INC., an Arizona corporation, and
COLORADO DELTA MECHANICAL INC., a Colorado corporation,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on the parties' "Joint Motion for Approval of Settlement Agreement" [Doc. No. 47] ("Joint Mot."). Pursuant to the Order of Reference dated November 19, 2013 [Doc. No. 6] and the memorandum dated June 12, 2015 [Doc. No. 50] December 4, 2014 (Doc. # 15), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

Also before the court is "Plaintiff's Petition for Reasonable Attorneys' Fees and Costs" ("Fee Pet.") filed June 12, 2015. [Doc. No. 49.] On June 24, 2015, Defendants filed their "Response to Plaintiff's Petition for Reasonable Attorneys' Fees and Costs" ("Resp.") [Doc. No. 52].

Plaintiff has asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") arising out of Defendants' alleged classification of him as an

independent contractor and failing to pay regular and/or premium pay for all hours worked.  (Compl.¶ 1.)

### *Background*

Defendant Delta Mechanical provides installation services for gas or electric water heaters, tankless water heaters, solar water heaters, water softeners, water treatment, sinks, faucets, toilets and core plumbing.  Delta Mechanical employs technicians to install appliances, water heaters, toilets and other products purchased by consumers from Home Depot and other providers.  Plaintiff worked in Colorado for Delta Mechanical as an installation technician for a period of approximately two months. Plaintiff alleges that Delta Mechanical failed to pay premium overtime pay for hours worked by Plaintiff and other employees in excess of twelve per day and/or forty per week, failed to pay minimum wages for all non-overtime hours worked by Plaintiff and other employees, and  required Plaintiff and other employees to pay the cost of gas for travel to and from jobs.  Plaintiff filed this action on November 13, 2013, for all unpaid overtime compensation in the total amount of five thousand dollars ($5,000.00) plus an additional five thousand dollars ($5,000.00) in liquidated damages, as well as all reasonable attorneys' fees and costs and any other equitable and ancillary relief pursuant to the FLSA, the Wage Claim Act and the Minimum Wage Act.  (*See* Final Pretrial Order [Doc. No. 37] at 2.)

Defendants claim Plaintiff contracted with Defendants from July 30, 2013 through September 30, 2013 to perform certain plumbing installation services pursuant to a written Independent Contractor Agreement ("ICA") dated July 20, 2013, and, pursuant to the terms of the ICA, Plaintiff acted independently to perform installation services for

Defendants and was responsible for complying with all applicable state and federal laws. During that two month period, Defendants assert Plaintiff, by mutual agreement, accepted various installation jobs ranging from one to a maximum of four jobs in any given day, and in exchange for his installation work, Plaintiff was compensated at the rate of $100.00 for a water heater install, $45.00 for a toilet install, $40.00 for a kitchen garbage disposal install, and he negotiated labor charges for any custom labor he performed.  In addition, during the initial training period when he became familiar with Delta's work and clientele, Defendants assert Plaintiff was paid a flat rate of $800.00 for his time. Defendants assert that even if Plaintiff were able to prevail on his theory that he was misclassified and should have been deemed an employee, there is no work week in which he labored more than 40 hours, or any work day when he worked more than 12 hours. Defendants claim Plaintiff worked only sporadically for Delta over a very limited period of time, and the installation jobs he accepted required no more than one to two hours to complete.  Defendants assert Plaintiff received substantial compensation for his labor on a piece-rate basis deriving an hourly rate that far exceeded the statutory minimum of $7.78 per hour.  (*See* Final Pretrial Order [Doc. No. 37] at 2-3.)

The Joint Motion states, "Plaintiff filed the Lawsuit as a class and collective action but ultimately decided not to seek class certification and proceeded to resolve this matter on an individual basis."  (*Id*., ¶ 4.)  The court notes that no effort was made during the pendency of this case to certify a class, and the case proceeded as a single plaintiff case seeking damages for two months of alleged unpaid overtime.

***Legal Standard***

"Congress enacted the FLSA in 1938 with the goal of protect[ing] all covered workers from substandard wages and oppressive working hours." *Christopher v. SmithKline Beecham Corp.,* 132 S. Ct. 2156, 2162 (2012). The "prime purpose" in enacting the FLSA "was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 707 n.18 (1945).

To help further its goals, the FLSA provides that an employee or multiple employees may bring an action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). When employees file suit against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982); *Baker v. Vail Resorts Management Co.,* Case No. 13–cv–01649–PAB–CBS, 2014 WL 700096 (D. Colo. Feb. 24, 2014). Requiring court approval of FLSA settlements effectuates the purpose of the statute. *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. at 706 (1945). To approve the settlement agreement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees. *Lynn's Food Stores,* 679 F.2d at 1354; *Baker,* 2014 WL 700096, at *1.

*Analysis*

**A. Bona Fide Dispute**

Parties requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists. *Baker,* 2014 WL 700096, at *1; *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010). To meet this obligation, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*; *Collins v. Sanderson Farms, Inc.,* 568 F. Supp. 2d 714, 718 (E.D. La. 2008). The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement. *Id.*

Since the lawsuit was filed, the parties conducted minimal discovery on issues relating to the individual claims asserted by Plaintiff and the related defenses and damages. Plaintiff's counsel issued and Defendants responded to one set of interrogatories and requests to produce documents. The parties took three depositions. The parties assert that counsel for all parties have vigorously pursued their positions and the rights of their clients through extended, focused, legal and factual analysis and exchanges of information. The parties also engaged in arm's-length negotiation to try to resolve this matter. (Joint Mot., ¶ 4.) At the time of the filing of the Joint Motion, the parties were on the eve of trial, which was scheduled for June 8, 2015.

The Supreme Court has defined sham litigation as a lawsuit that is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 60–61 (1993).  *See also Total Renal Care, Inc. v. Western Nephrology and Metabolic Bone Disease, P. C.,* Case No. 08–cv–00513–CMA–KMT, 2009 WL 2596493, at *9 (D. Colo. Aug. 21, 2009).  Sham litigation by definition does not involve a bona fide grievance. *Protect Our Mountain Environment, Inc. v. District Court,* 677 P.2d 1361, 1369 (Colo. 1984). The court finds that this case is not sham litigation and that it very much involves a bona fide dispute between adversarial opponents.

### B. Fair and Equitable Settlement Agreement

Plaintiff claims he worked, on average, approximately six days a week, approximately fifty-five to sixty hours per week, for approximately nine to ten total weeks while employed with Defendants.  The Plaintiff claimed approximately $5,000.00 in unpaid overtime compensation.

The parties to this settlement assert that the settlement was negotiated at arm's length, by experienced counsel, concerning the disputed issues between their clients with respect to liability and the amount due under the FLSA for allegedly unpaid wages, including unpaid overtime compensation, compensatory damages, liquidated damages, and prejudgment interest.  (Joint Mot, ¶ 9.)  As part of the Settlement Agreement the defendants have agreed to pay the plaintiff $6,000.00 in gross IRS Form 1099 damages. (Settlement Agreement [Doc. No. 47-1], ¶ 3(a).)  The defendants also have agreed to pay Plaintiff the amount of his reasonable attorneys' fees and court costs as determined by the

Court and agreed for purposes of determining those fees that Plaintiff is the prevailing party in the action.  (*Id.*, 3(b).)

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales.  Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement under Fed. R. Civ. P. Rule 23(e). *Gambrell v. Weber Carpet, Inc.,* No. 10–131–KHV, 2012 WL 5306273, at *3 (D. Kan. Oct. 29, 2012); *Hobbs v. Tandem Environmental Solutions, Inc.,* No. 10–1204–KHV, 2012 WL 4747166, at *2 (D. Kan. Oct. 4, 2012); *McCaffrey v. Mortg. Sources, Corp.,* No. 08–2660–KHV, 2011 WL 32436, at *5 (D. Kan. Jan. 5, 2011).  The Tenth Circuit considers the following factors when deciding whether to approve a class action settlement under Fed. R. Civ. P. 23(e): (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002).

This Settlement Agreement was the product of arm's-length negotiations by experienced counsel.  (Joint Mot., ¶ 8.)  The settlement figure agreed upon bears a reasonable and fair relationship to the amount alleged by the Plaintiff in this matter and also takes into consideration the inevitable risks of litigation and the defenses raised by Defendants if this matter were to proceed.  In fact, Plaintiff's counsel states his belief that the amount recovered for Plaintiff significantly exceeds the amount Plaintiff could have

7

recovered at trial.  (*Id.*)  For their part, Defendants claim it was simply not economically feasible to proceed to trial given the nature of the Plaintiff's claims and possible damages.  (*Id.*)

Under these circumstances, a presumption of fairness attaches to the proposed settlement.  *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Secs. Litig.,* 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court[ ] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.")  The Court sees no evidence of fraud or collusion or any other factor which would undermine this presumption here.

Next, the Court must determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power.  To determine whether a settlement agreement complies with the FLSA, courts look at the following factors: (1) presence of other similarly situated employees; (2) a likelihood that plaintiff's circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA. *Baker,* 2014 WL 700096, at *2.  The record shows that no other similarly-situated employees have sought to join this action, and Plaintiff's counsel appears to have not seriously pursued class action certification.  It appears that Plaintiff's claims are unique unto himself and his very short-term association with Defendants.  There is no evidence

that Defendants' alleged failure to comply with the FLSA represents a continuing violation or is part of widespread conduct. ( *Id.*)

The court has reviewed the terms of the Settlement Agreement and finds that the monetary terms are fair and equitable based on the Plaintiff's allegation of $5,000.00 in total wage loss. The compensation agreed to provides the Plaintiff with more than his actual claimed damages and provides that he will not be assessed from his award for attorneys' fees or other litigation costs. In light of all the circumstances, and for the reasons discussed above, the court finds that the settlement is fair and reasonable and, as set forth below, provides an adequate provision for the payment of Plaintiff's attorney fees.

### C.       *Attorney Fees*

Plaintiff seeks court-ordered reimbursement for 278.55 hours of attorney time, divided between two law firms, up to four lawyers, and scattered support personnel for a total attorney fee reimbursement of $88,158.75 and $2,704.20 in costs. The parties represent that Plaintiff's recovery was addressed independently of attorneys' fees considerations and that his recovery was not influenced by the issue of attorneys' fees. (Joint Mot., ¶ 12.) The Court must examine whether the award of $90,862.95 is reasonable. *Baker,* 2014 WL 700096, at *2. Clearly, such a large sum is not reasonable in this case. Therefore, the court must determine what amount is reasonable, if any.

To determine the reasonableness of a fee request, a court must begin by calculating the "lodestar amount," which represents the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Balkind v. Telluride Mountain Title Co.,* 8 P.3d 581, 587–88 (Colo. App.

2000).  A party seeking an award of attorneys' fees must establish the reasonableness of

each dollar and each hour for which the party seeks an award.  *Jane L. v. Bangerter,* 61

F.3d 1505, 1510 (10th Cir. 1995).

Once ascertained, the lodestar amount may be adjusted based upon several

factors, including the amount in controversy, the length of time required to represent the

client effectively, the complexity of the case, the value of the legal services to the client,

awards in similar cases, and the degree of success achieved.  *See Tallitsch v. Child*

*Support Servs., Inc.,* 926 P.2d 143, 147 (Colo. App. 1996).

"The purpose of the FLSA attorney fees provision is to insure effective access to

the judicial process by providing attorney fees for prevailing plaintiffs with wage and

hour grievances."  *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994) (citing *United*

*Slate, Tile & Composition Roofers v. G&M Roofing and Sheet Metal Co.,* 732 F.2d 495

(6th Cir. 1984)).  Since such claims frequently are for small amounts of money, "[c]ourts

should not place an undue emphasis on the amount of the plaintiff's recovery because an

award of attorney fees here 'encourages the vindication of congressionally identified

policies and rights.' "  *Id.*  If the FLSA required attorneys' fees to be strictly proportionate

to the amount of wages at issue, individuals with small claims would effectively be

denied access to counsel.  *Heder v. City of Two* Rivers, 255 F.Supp.2d 947, 955 (E.D.

Wisc. 2003).  The Court exercises its "discretion in making this equitable judgment" and

will not "apportion the fee award mechanically" but rather considers each claimed

expense and determining its reasonableness overall.  *Hensley*, 461 U.S. at 436–40

(holding that the Court "should make clear that it has considered the relationship between

the amount of the fee awarded and the results obtained"); *see also White v. GMC, Inc.,*

908 F.2d 675, 684–85 (10th Cir. 1990) (noting that the amount of fees accumulated to secure the desired result must be reasonably related to the type and significance of issue in dispute); *Blocklin v. Black Pepper Pho, LLC.*, Case No. 14-cv-1252-WJM-KLM, 2014 WL 6819894, *4 (D. Colo. Dec. 3, 2014).

This case presents a single plaintiff who worked for the Defendants from July 30, 2013 to September 30, 2013, a scant two months. Plaintiff's attorneys filed this case as a purported class action; however, they allowed the deadline for class certification to pass and never made any effort towards class certification. None of the billing records show any attempt to investigate a class action or to interview any other employees to determine if there were grounds for a class action. The substantive work on the case from a legal perspective was limited to filing a two count complaint and arranging for service, serving a two page initial disclosure statement, serving one set of interrogatories and requests for production of documents, preparing one disputed discovery motion which was denied as moot by the court, taking two half-day telephonic depositions of Defendants' representatives and defending Plaintiff's deposition, and drafting the settlement agreement and the request for attorneys' fees.

### 1.    *Billing Rate for Attorneys*

Plaintiff seeks reimbursement for the efforts of three[1] attorneys. Andrew C. Ficzko of Stephan Zouras, LLP, based in Chicago, Illinois, graduated from Drake University Law School in 2009 and was admitted to the U.S. District Court for Northern Illinois in December 2012. The Plaintiff seeks reimbursement at the rate of $300.00 per

---

[1] The court does not consider the billing rate of James B. Zouras because no hours attributed to Mr. Zouras made it through the court's initial winnowing.

11

hour for Mr. Ficzko. Plaintiff also seeks fees for time expended by Ryan F. Stephan, another attorney based in Chicago, Illinois, who graduated from Chicago Kent College of Law in 2000. Both attorneys practice primarily in Chicago, Illinois, but have been admitted to various state and federal bars and concentrate their practice in wage and hour litigation. Mr. Stephan requests approval of an hourly billing rate of $500 per hour. Brian D. Gonzales, the only Colorado-based lawyer for Plaintiff, has maintained his own law firm since 2008, and engages almost exclusively in wage and hour litigation. Mr. Gonzales graduated from the University of Michigan School of Law in 1996. His requested billing rate is $400.00 per hour. Plaintiff also seeks reimbursement for time spent by paralegals and clerical staff at the Chicago law office.

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002). The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr.,* 163 F.3d 1186, 1203 (10th Cir.1998). In order to satisfy its burden, Plaintiff must produce "satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984). The Court can adjust the rates suggested by counsel based on its own familiarity with the range of prevailing rates in the Denver, Colorado market. *Guides, Ltd.,* 295 F.3d at 1079.

The 'relevant community' for determining hourly rates is the place where the case is brought and where it would be tried, absent a settlement. *Jane L.*, 61 F.3d at 1510

("the fee rates of the local area should be applied"); *Farmers Co-Op Co. v. Senske & Son Transfer Co., 572 F.3d 492, 500* (8th Cir.2009) (same).  The court finds the rates for both Chicago attorneys are above the reasonable rates for attorneys with comparable experience and skill in this field in Colorado.

In *Mendoza v. Valley Park Apartments, Inc.*, Case No. 13-cv-00002-PAB-KMT, 2014 WL 984687, *6–7 (D. Colo. March 12, 2014), District Judge Philip Brimmer, the same District Judge in this case, found that the $250.00 per hour fee of two Colorado attorneys who regularly represent workers in wage and hour cases was reasonable.  *Id.* ("Case law in this district supports the conclusion that $250 is a reasonable rate in the Denver market, given that Mr. Milstein has seven years of experience practicing in the area of labor law.").  In making his finding, Judge Brimmer cited with approval *Fann v. Hartford Underwriters Ins. Co.,* Case No. 11–cv–03156–CMA–BNB, 2012 WL 5363786, at *2 (D. Colo. Oct. 31, 2012) (finding that $260 is a reasonable rate for a lawyer practicing in Colorado with seven years of experience) and *Universal Drilling Co., Inc. v. Newpark Drilling Fluids, LLC,* No. 08–cv–02686–MSK–CBS, 2011 WL 715961, at *2 (D. Colo. Feb. 22, 2011) (finding that $250.00 per hour charged by attorneys in the field of labor law was reasonable relying upon a 2008 Colorado Bar Association survey indicating that median hourly rate charged by associates at firms with more than thirty partners was $250.00 per hour).  Last year, in *Baker,* District Judge Brimmer found that $280.00 per hour was a reasonable hourly rate in FLSA cases for an attorney who had been practicing law since 2000 and for another with seven years of experience.  *Baker,* 2014 WL 700096, at *3.

Other judges in this District have found similarly. In *Horne v. Scott's Concrete Contractor, LLC,* Case No. 12-cv-01445-WYD-KLM, 2013 WL 3713905, at *10 (D. Colo. April 24, 2013), Magistrate Judge Kristen L. Mix found hourly rates of $250.00 and $200.00 reasonable rates in this jurisdiction. *See also Olivares v. UFP Lafayette, LLC,* No. 12–cv–01082–CMA–KLM, 2013 WL 2477124, at *1 (D. Colo. June 10, 2013) (approving $280 hourly rate for lead counsel and $200 hourly rate for associate attorney in FLSA case); *Shrader v. Beann,* Case No. 10–cv–01881–REB–MLW, 2012 WL 527480, at *3 (D. Colo. Feb. 12, 2012) (finding that an hourly rate of $425 for senior attorneys in the Denver area is reasonable); *Broker's Choice of Am ., Inc. v. NBC Universal, Inc.,* No. 09–cv–00717–CMA–BNB, 2011 WL 3568165, at *8–9 (D. Colo. Aug. 15, 2011) (same)).

The Court finds that $250.00 is a reasonable hourly rate in this FLSA case for an attorney of Mr. Ficzko's skill and experience, and a hourly rate of $300.00 per hour is reasonable for attorneys with Mr. Stephan's and Mr. Gonzales's experience.

### 2. *Hours Expended on the Litigation.*

Both implicit in any award of attorneys' fees, and explicit in the award in the instant case, is the requirement that any such fees must be reasonable. *See Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1201 (10th Cir. 1986) (party requesting attorneys' fees has burden to "prove and establish the reasonableness of each dollar, each hour, above zero"); *Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir. 1998) (prevailing party must make good faith effort to exclude from a fee request any excessive, redundant or otherwise unnecessary hours). *See Stransky v. Healthone of Denver, Inc.,* Case No. 11-cv-02888-WJM-MJW, 2013 WL 5951493, at *2 (D. Colo.

Nov. 7, 2013).  The best evidence of reasonable fees is "meticulous time records that 'reveal . . . all hours for which compensation is requested and how those hours were allotted to specific tasks.' "  *Jane L.,* 61 F.3d at 1510 (quoting *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir. 1983)).

In addition to cutting the hourly rates of the attorneys to $250.00 per hour for Mr. Ficzko and $300.00 per hour for Mr. Stephan and Mr. Gonzales, the court must adjust the hours billed based upon the fact that three attorneys, plus several paralegals and other clerical staff, handled this case in lieu of the more reasonable single attorney in a case such as this.  Parties may choose to hire and pay as many lawyers as they wish to represent them in a matter; the court, however, finds that only one lawyer was necessary to represent Mr. Albu in this simple matter, and that equivalent is all that should be chargeable to Defendants.

Counsel must, in any fee request, exercise "billing judgment" to winnow the hours *actually* expended down to the hours *reasonably* expended.  *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir.1998).  Clearly the lawyers for Plaintiff in this case did not perform this important task.  Therefore, the court has been forced to review the hourly submissions for each attorney on each day and remove duplicated effort and other inappropriate entries.

The 42-page billing records of Mr. Ficzko and Mr. Stephan contain a huge number of communications between and among the multiple attorneys in the case.[2]  First, the court went through each daily entry, and, for each entry where multiple attorneys

---

[2] The examples in this section of the Recommendation are meant only as illustrative, as documenting each and every change made to the voluminous records would be unnecessarily tautological.

billed for the same communication they had between themselves, the time entry was reduced to billing for only one attorney or was eliminated altogether where unnecessary.[3] Second, the court eliminated billings for mere clerical work.[4] Meetings with unknown persons for unknown purposes also were eliminated.[5] Any billing where the time entries indicated "Do Not Bill" were eliminated, although in many instances the billing entry would have been eliminated based on other criteria delineated herein.[6] Finally, where it was patently obvious to the court upon initial review that the hours spent on a given task were unreasonable, the court added the total time spent on the task and cut the total entry.[7]

At the conclusion of the initial winnowing of hours, the resultant billed hours were 20.9 hours billed by "Ryan" at $300.00 per hour, 91.25 hours billed by "Andrew" at

---

[3] For example, on October 24, 2013, the billings of Mr. Ryan and Mr. Gonzales both were eliminated.  On October 30, 2013, Mr. Ryan's billing for discussing "strategy" with Mr. Gonzales was eliminated, but Mr. Gonzales's billing on the same day was allowed because discrete tasks were included.

[4] For example, the half-hour billed by "Irene" on February 11, 2014, "filed Ryan's Bar Application and ECF registration with the US District Court for the District of Colorado." Also, the clearly mistaken billing entry for "Irene" on February 18, 2014, was eliminated under this provision.

[5] For example, billing on November 3, 2014 by Andrew for meeting with "JZ" and "RS" (believed to be other attorneys in the firm) was eliminated.

[6] For example, billing on November 20, 2014 for "Andrew" was eliminated.  If a time entry was not allowable or billable to a client, it was not allowable or billable to an adversary.

[7] 13.50 hours of preparation time billed by "Andrew" for the deposition of Todor Kitchukov was deemed facially unreasonable in this case and therefore was cut by 6.00 hours.  17.10 hours devoted by "Andrew" to preparation of the request for fees was cut by 9.10 hours.

$250.00 per hour, 6 allowable hours of paralegal assistance at $125.00 per hour, and 40 hours billed by Mr. Gonzales at $300.00 per hour, for a total billing of $41,832.50.

Next, the court considered the actual work performed in this case, including filing a two count complaint and arranging for service, preparing and serving initial disclosures, preparing for and attending the scheduling conference, preparing and serving one set of interrogatories and requests for production of documents, preparing one disputed discovery motion that was denied as moot by the court, taking two half-day telephonic depositions of Defendants' representatives and defending Plaintiff s deposition, and negotiating and drafting the settlement agreement and the request for attorneys' fees.

The breakdown in the billing based on the "winnowed" billing entries shows the following with respect to actual litigation conduct:

Complaint:  Mr. Stephan 3 hours; Mr. Gonzales, 3.4 hours;
Scheduling Conference and Order: Mr. Gonzales 4.25 hours, Mr. Stephan, .25 hours;
Written Discovery: Mr. Ficzko, 3.5 hours;
Review of Discovery Responses: Mr. Ficzko, 1.5 hours;
Motion to Compel: Mr. Ficzko, 8 hours;
Preparation for Kitchukov Deposition: Mr. Ficzko, 7.5 hours[8], Mr. Gonzales 5.4 hours, paralegal hours, 1.75;
Conduct Deposition of Kitchukov: Mr. Ficzko, 5.75 hours;
Preparation for Deposition of Yardanov: Mr. Ficzko, 6.75 hours, paralegal hours, .5;
Conduct Deposition of Yardanov: Mr. Ficzko, 5.25 hours;
Preparation for Trial: Mr. Ficzko, 3.50 hours, Mr. Gonzales, 4.70 hours;
Preparation of Settlement Documents: Mr. Ficzko, 14.10 hours, Mr. Stephan, .70 hours;
Preparation of Fee Petition: Mr. Ficzko, 8 hours[9], Mr. Gonzales, 5.2 hours.

---

[8] Hours remaining after initial review.

[9] Hours remaining after initial review.

Total time billed on litigation activity: Mr. Stephan, 3.95 hours ($1,185.00), Mr. Ficzko, 63.85 hours ($15,962.50), Mr. Gonzales, 22.95 hours ($6,885.00), paralegal hours, 2.25 ($281.25).

The court finds that Mr. Ficzko's time, however, is not reasonable for work on this simple case with one plaintiff who worked only for two months for the Defendants and with no complicated legal issues. Allowing Plaintiff to collect fees for 8 hours for drafting a motion to compel that was denied out of hand as moot, for instance, is unreasonable. This court finds that 3 hours of attorney time should be allowed for having to argue with opposing counsel leading up to a discovery production that Plaintiff considered adequate, reducing the billed amount by 5 hours. The time for preparation for the two of the Defendants' employees also is unreasonable, even after this court had reduced what was originally billed. Each of the depositions was conducted telephonically and took only one-half day. For attorneys experienced in what information needs to be obtained from an employer in a FLSA case, and especially given the very short time the Plaintiff worked for the company and the commensurate reduction in the relevant documents and calculations, 2 hours per deposition would have been ample time for preparation. Therefore, Mr. Ficzko's time is reduced by 10.25 hours for the deposition preparation time. This court also finds that a reasonable time spent on the preparation of settlement documents, which are extremely routine in FLSA cases, and on the preparation of the fee request should be no more than 3 hours on the settlement documents and 5 hours on the fee request. Therefore, Mr. Ficzko's time is reduced by 14.10 hours on those projects. Mr. Ficzko's time spent on litigation activities is reduced to 34.5 hours ($8,625.00) in total.

Adding the sums together, this court finds the reasonable lodestar fee amount for litigation activities is $10,776.25.  Recognizing that attorneys pursuing a case must allow time for consultation with the plaintiff and for conferring with Defendants' counsel, the court finds that the reasonable amount of attorneys' fees that should be awarded in this case is $15,000.00.

Defendants object to any award of attorney fees in this matter because they claim that the plaintiff took unreasonable positions during settlement negotiations, which caused unnecessary expenses, including fees, to accumulate when the case could have been reasonably settled early.  (Resp. at 2-3.)  Defendant states that on December 6, 2013, before Defendants filed their Answer, Defendants offered to settle the case for $1,500.00.  Two months later, the plaintiff responded with a demand of $14,400.00 (representing Plaintiff Albu's damages calculated at $7,200.00 times two) plus a demand for payment of fees and costs in the amount of $47,000.00.  (Resp. at 3.)  Calculating fees from the documents presented to the court as part of this fee request reveals that, at the time Plaintiff demanded $47,000.00 in attorneys' fees, Defendants had "only" substantiated billing of approximately $21,000.00.  Although the fee demand by Plaintiff was patently unreasonable, Defendants compounded the problem by countering with $5,000.00 in full settlement, thus completely ignoring and dismissing Plaintiff's ability to be compensated for attorneys' fees in the event of his prevailing in the case.  In April 2014, Plaintiff suggested exploring settlement in the total amount of $30,000.00, but Defendants ultimately only increased their offer to $6,500.00.  Although settlement was anemically explored after that time, this was the critical moment in the case for settlement purposes -- the so-called "sweet spot."  Had Defendants been willing to

19

recognize the possibility of an award of attorneys' fees in some amount and had the
Plaintiff been reasonable in his calculation of <u>reasonable</u> fees, the case might have
settled.  Given the parties' base positions (Plaintiff at $30,000 and Defendants at
$6,500.00), and based on the considerable experience of this court with settlement
negotiations, the court would have expected the case at that juncture to settle for
approximately $20,000.  Given that both Plaintiff and Defendants were at fault for failing
to see the forest for the trees, the court cannot say that Plaintiff alone should be faulted
for the litigation dragging on for an unreasonable time given the scope of the damages.
On the other hand, the award the court recommends today together with the damages
amount agreed upon by the parties, is almost identical to what the case could likely have
settled for in April of 2014, thus reinforcing the court determination that the
recommended fee award is reasonable in this case.

### D.      Expenses

Plaintiff seeks recompense from Defendants for $2,704.20 in expenses.  (Fee Pet.,
Ex. 7, 1-2)  Plaintiff, however, lists only $1,866.72 as "billable" expenses on the Chicago
expenses because an $810.00 item was obviously billed twice.  This court finds that the
'Westlaw' charges and 'Pacer' charges should not be allowed in a case such as this, nor
the telephone "conference moderator charge" for which the necessity is not explained.
The court will allow the $810.00 cost for the Yardanov deposition and $787.50 for the
Kitchukov deposition, the filing fee of $400.00, and the fee for service of process of
$64.48.  The court finds that the expense for the 'Bar Application fee' of $211.00 should
not be allowed -- local counsel was retained on the case.  This court finds that the total
costs which should be awarded to Plaintiff are $2,061.98.

WHEREFORE, the court finds that the settlement reached by the parties is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.  Accordingly, the court

**RECOMMENS** that the "Joint Motion for Approval of Settlement Agreement" [Doc. No. 47] be **GRANTED** and this civil action be dismissed with prejudice, as stipulated by the parties.  The court further

**RECOMMENDS** that "Plaintiff's Petition for Reasonable Attorneys' Fees and Costs" [Doc. No. 49] be **GRANTED in part and DENIED in part** consistent with this Recommendation.  The court recommends the Plaintiff be awarded as part of the settlement its reasonable attorneys' fees in the total amount of $15,000.00 plus its reasonable costs in the amount of $2,061.98.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings

21

and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

    Dated this 30th day of June, 2015.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge